IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| HARLEY WHITED | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| VS. | § | Civil Action No. 7:21-cv-00085 |
| | § | Jury Requested |
| FORD MOTOR COMPANY | § | |
| | § | |
| Defendant. | § | |

# PLAINTIFF'S ORIGINAL COMPLAINT

**To the Honorable United States Judge of Said Court:**

COMES NOW, HARLEY WHITED (hereinafter referred to as "Plaintiff"), and respectfully files this Complaint against Ford Motor Company, and in support hereof would state and show the following:

## I. Parties

1. Plaintiff HARLEY WHITED is a resident and citizen of Wichita Falls, Wichita County, Texas.

2. Defendant Ford Motor Company is a foreign Corporation doing business in Texas, and service upon this Defendant may be done by serving its registered agent, CT Corporation System, at 1999 Bryan, Suite 900, Dallas, Texas 75201.

## II. Facts

3. On or about June 8, 2020 HARLEY WHITED was driving a 2008 Ford Edge (VIN# 2FMDK38C88BA18487) traveling east on Central Freeway.

4. Allie Bindi was traveling west on Central Freeway.

5. For unknown reasons Allie Bindi left his lane of travel and collided head-on with the vehicle driven by Harley Whited.

6. The subject Ford vehicle driven by Mrs. Whited was designed by Defendants Ford Motor Company.

7. The subject Ford vehicle driven by Mrs. Whited was manufactured by Defendant Ford Motor Company.

8. The subject Ford vehicle driven by Mrs. Whited was also assembled and tested by Defendant Ford Motor Company.

9. The result of the collision caused severe damage to the front of the Whited vehicle with extensive spooling of the seatbelt.

 

10. At the time of the accident, Mrs. Whited was properly seated and properly wearing the available seat belt.

11. As a result of the improper spooling and compartment compromise, Harley Whited sustained serious injuries when the vehicle failed to protect her because it violated several crashworthiness principles.

12. There are five (5) recognized crashworthiness principles in the automobile industry/throughout the world. They are as follows:

    a. Maintain survival space;

    b. Provide proper restraint throughout the entire accident;

    c. Prevent ejection;

    d. Distribute and channel energy; and

    e. Prevent post-crash fires.

13. When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960's, the preamble to the safety standards included the above definition of crashworthiness.

14. Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails.

15. Vehicle manufactures have known for decades and have admitted under oath that there is a distinction between the cause of the accident versus the cause of an injury.

16. Indeed, vehicle manufacturers have known for decades that crashworthiness is the science of preventing or minimizing injuries or death following an accident through the use of a vehicle's various safety systems.

17. Lee Iacocca, former President of Ford Motor Company stated, while President and CEO of Chrysler, that "Every American has the right to a safe vehicle."

18. General Motors has stated in the past that, "The rich don't deserve to be safer…Isn't it time we realized safety is not just for the pampered and the privileged? Safety is for all."

19. Volvo has stated that it has a goal that no one is killed or injured in a Volvo vehicle by the year 2020. Volvo has also stated that, "Technologies for meeting the goal of zero injuries and fatalities are basically known today – it is a matter of how to apply, finance, distribute and activate."

20. Because every American has the right to a safe vehicle, because safety is for all, and because technologies for meeting the goal of zero injuries and fatalities are basically known today, it is incumbent upon auto manufacturers to investigate and find out what other automakers are doing with regards to safety and to apply those same methods or technology to their own vehicle.

21. Furthermore, an automaker cannot choose to use safer technology in Europe, Australia, Japan, or some other country and refuse or fail to offer that same safety technology to consumers in America.

22. While there are minimum performance standards which an automaker is supposed to meet before selling a vehicle in the United States (the FMVSS), these minimum performance standards to not adequately protect the public.

23. Indeed, Joan Claybrook, former administrator of the NHTSA, wrote a letter to major auto makers where she said, "Our federal safety standards are and were intended to Congress to be minimum standards. The tragedy is that many manufacturers have treated the standards more like ceilings on safety performance rather than floors from which to improve safety."

24. Additionally, in September of 2014, a Congressional report was issued in response to the General Motors ignition switch recall. The report questioned whether NHTSA had the technical expertise, culture and analytic tools needed to address safety issues. The report stated, "NHTSA also lacked the focus and rigor expected of a federal safety regulator." It was also stated that NHTSA staff has a "lack of knowledge and awareness regarding the evolution of vehicle safety systems they regulate."

### III. Cause(s) of Action as to Defendant Ford Motor Company.

25. Defendant designed, manufactured, marketed, distributed, assembled, and tested the vehicle that left Harley Whited with severe and life changing injuries.

26. The vehicle was defective and unreasonably dangerous for its intended use.

27. The vehicle was defective at the time it left Defendant's control.

28. Reasonable consumers would not have been aware of the defective condition of the vehicle.

29. Plaintiff was not aware of the defects in subject vehicle.

30. It was entirely foreseeable to and well-known by Defendant Ford Motor Company ("Defendant Ford") that accidents and incidents involving their vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicle.

31. The injuries complained of occurred because the vehicle in question was not reasonably crashworthy, and was not reasonably fit for unintended, but clearly foreseeable, accidents. The vehicle in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

32. Defendant Ford, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question.

33. As detailed herein, the vehicle contains and/or Defendant Ford has committed either design, manufacturing, marketing, assembling, and/or testing defects.

34. Defendant Ford either knew or should have known of at least one safer alternative design which would have prevented the serious injuries to the Plaintiff.

35. In addition to the foregoing, Defendant Ford, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the vehicle was unreasonably dangerous as designed, manufactured, assembled,

marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

    a. The vehicle restraint system violated principles of crashworthiness;
    b. The vehicle's restraint system, which includes the airbags, failed to provide adequate safety, protection and benefit;
    c. The vehicle failed to provide a proper restraint system;
    d. The vehicle failed to have adequate submarining protection;
    e. The vehicle's restraint system permitted excessive forward excursion;
    f. The defects were the producing cause of the injuries and damages in question.

36. Defendant Ford was further negligent in that it failed to conduct proper testing and engineering analysis during the design, development and testing of the vehicle.

37. Defendant Ford was negligent in the manufacture, assembly, marketing, and/or testing of the vehicle in question.

38. In designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death;

39. Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

40. If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

41. If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

42. A company that does not conduct a proper engineering analysis that would help it to identify potential risks, hazards, and/or dangers that could seriously injure someone is negligent.

43. Based upon information and/or belief, Defendant either used or knew about advanced safety features used in Europe, Australia, Japan and some other country and chose not to offer those safety features to American consumers.

44. Defendant's occupant protection philosophy and design philosophy are utilized in various model vehicles, including ones sold overseas in other markets.

45. When Defendant Ford designed the subject vehicle, it did not reinvent the wheel. Defendant Ford used an enormous amount of human capital which had been acquired from numerous different engineers which had worked on many prior vehicle. This knowledge would have been utilized in different aspects of the various designs of the subject vehicle.

46. Defendant Ford is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the vehicle in question. Defendant Ford is also in possession of what, if any, engineering analysis it performed.

47. However, it is expected that after all of these materials are produced in discovery and/or after Defendant's employees and corporate representatives have been deposed, additional allegations may come to light.

48. Lastly, the materials from other models, years, and countries will provide evidence regarding what Defendant Ford knew, when they knew it, and about what was utilized or not utilized as well as the reasons why.

49. The foregoing acts and/or omissions, design defects and negligence of Defendant Ford were the producing, direct, proximate and legal cause of the Plaintiffs' serious injuries and damages.

## IV. Damages to Plaintiff

50. As a result of the acts and/or omissions of the Defendant, Harley Whited has endured pain and suffering, emotional distress, mental anguish, impairment, and disfigurement, interference with her daily activities and a reduced capacity to enjoy life as a result of her injuries.

51. As a result of the acts and/or omissions of the Defendant, Harley Whited has become obligated to pay extensive medical expenses as a result of her injuries.

52. As a result of the act and/or omissions of the Defendant, Harley Whited has suffered lost wages in the past and in all likelihood will into the future as result of her injuries.

53. The above and foregoing acts and/or omissions of the Defendant, resulting in the serious injuries to Plaintiff, have caused actual damages to Plaintiff in excess of the minimum jurisdictional limits of this Court.

## V. Prayer

54. For the reasons presented herein, Plaintiff prays that Defendant be cited to appear and answer, and that upon a final trial of this cause, Plaintiff recovers judgment, jointly and severally, against Defendants for:

   a. actual damages;
   b. prejudgment and post-judgment interest beginning June 8, 2020;
   c. costs of suit; and
   d. all other relief, general and special, to which Plaintiff is entitled to at law and/or in equity, and/or which the Court deems proper.

Respectfully submitted,

*/s/ Stewart D. Matthews*
Stewart D. Matthews
State Bar No. 24039042
Attorney@accidentlawyer.legal
2106 W. Ennis Avenue
Suite B
Ennis, Texas  75119
(972) 398-6666 – Phone
(214) 206-9991 – Fax

**Attorney for Plaintiff**